UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROWLAND A. RUPP,

                Plaintiff,

          v.

ALBANY LAW SCHOOL OF UNION
UNIVERSITY,

                Defendant.

Civil Action No. 1:26-cv-045
(MAD/PJE)

---

## DEFENDANT ALBANY LAW SCHOOL'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

---

BOND, SCHOENECK & KING, PLLC
*Attorneys for Defendant*
22 Corporate Woods Blvd., Suite 501
Albany, New York 12211
T: 518.533.3000
E: sklein@bsk.com
   kwieneke@bsk.com

*Of Counsel:*    Stuart F. Klein, Esq.
                   Kristina Wieneke, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... iii

PRELIMINARY STATEMENT........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 1

    A.   The January 13, 2025 Incident........................................................................... 1

    B.   Alleged Prior Pattern of Conduct....................................................................... 2

    C.   The Competing Complaints and Initiation of Disciplinary Proceedings ........................... 3

      1. Rupp's Purported Complaint Against Farley ........................................................ 3

      2. Farley's Complaint Against Rupp..................................................................... 4

    D.   The Settlement ............................................................................................. 5

    E.   Rupp's Post-Settlement Related Lawsuits ............................................................ 5

STANDARD OF REVIEW ................................................................................................. 6

ARGUMENT ................................................................................................................. 7

POINT I  PLAINTIFF'S HOSTILE EDUCATION ENVIRONMENT CLAIM MUST BE
DISMISSED FOR FAILURE TO STATE A CLAIM.................................................................. 7

    A.   The Isolated Incident Was Not Severe or Pervasive ............................................... 8

    B.   Plaintiff Cannot Establish Conduct Was Motivated by His Race .....................................11

    C.   Plaintiff Fails To Establish Deliberate Indifference............................................... 12

    D.   Plaintiff Cannot Demonstrate Deprivation of Educational Benefits............................... 13

POINT II  PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION ........................................ 14

    A.   Plaintiff Did Not Engage in Protected Activity .................................................... 15

    B.   Plaintiff Fails to Allege a Cognizable Materially Adverse Action................................. 16

    C.   No Causal Nexus Between Any Protected Activity and the Alleged Adverse Action ...... 18

POINT III PLAINTIFF FAILS TO STATE A CLAIM FOR DENIAL OF EQUAL RIGHTS .... 19

i

A.    Neither Sub-Theory Implicates an Enumerated Contractual Right .................................. 20

B.    Plaintiff Cannot Satisfy the But-For Causation Standard Under Either Sub-Theory ....... 23

C.    Plaintiff Accepted the Outcome of the Disciplinary Process ........................................... 24

POINT IV  PLAINTIFF FAILS TO STATE  A CLAIM FOR NEGLIGENT SUPERVISION.... 24

POINT V  PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT .......... 26

A.    Plaintiff's Breach of Contract Claim is Duplicative & Procedurally Improper................ 26

B.    Plaintiff Fails to Specify the Contractual Provision Allegedly Breached......................... 28

C.    Plaintiff's Concurrent Sworn Filings Negate the Claim .................................................. 29

CONCLUSION.................................................................................................................. 30

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfano v. Costello*,
    294 F.3d 365 (2d Cir. 2002)........................................................................................8

*Am. Pharm. Servs. Inc. v. Wing*,
    259 A.D.2d 923 (3d Dept. 1999) ...............................................................................12

*Anonymous v. Anonymous*,
    137 A.D.2d 739 (2d Dept. 1988) .......................................................................19 n. 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................6

*Aubrey v. New Sch.*,
    624 F. Supp. 3d 403 (S.D.N.Y. 2022).................................................................. 20-21

*Bailey v. Colgate-Palmolive Co.*,
    99 Civ. 3228 (CBM), 2003 U.S. Dist. LEXIS 8175 (S.D.N.Y. May 14, 2003) ........9

*Bailey v. N.Y. Law Sch.*,
    2019 U.S. Dist. LEXIS 163669 (S.D.N.Y. Sep. 24, 2019).......................................16

*Banks v. GM LLC.*,
    F.4th 258, 263 (2d Cir. 2023) ...................................................................................10

*Barcellos v. City of New York*,
    No 157998/2018, 2024 N.Y. Misc. LEXIS 4688 (Sup. Ct. N.Y. Cnty June 4,
    2024) .........................................................................................................................18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................6

*Bloomberg v. NY City Dept. of Educ.*,
    119 F.4th 209 (2d Cir. 2024) ....................................................................................14

*Brown v. City of Oneonta*,
    221 F.3d 329 (2d Cir. 2000).......................................................................................19

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006)................................................................................................ 17-18

*Matter of Cagino v. N.Y. State Div. of Human Rights*,
    217 A.D.3d 1237 (3d Dept. 2023) ......................................................................14 n. 7

iii

*Cain v. Mercy College*,
   2020 U.S. Dist. LEXIS 128263 (S.D.N.Y Jul. 20, 2020) ......................................................10

*Comcast Corp. v. National Ass'n of African American-Owned Media*,
   589 U.S. 327 (2020)..................................................................................................20, 23

*Coville v. Ryder Truck Rental*,
   30 A.D.3d 744 (3d Dept. 2006) ........................................................................................25

*Curtis v. Citibank, N.A.*,
   226 F.3d 133 (2d Cir. 2000)..................................................................................28 *n.* 13

*Davis v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999)...........................................................................................................13

*Dortch v. New York City Dep't of Educ.*,
   2016 U.S. Dist. LEXIS 39646 (E.D.N.Y. Mar. 23, 2016).........................................................18

*DuBois v. Brookdale Univ. Hosp. & Med. Ctr.*,
   2004 N.Y. Slip Op 51819[U] (Sup. Ct. Kings Cnty 2004).......................................................17

*Eckardt v. City of White Plains*,
   87 A.D.3d 1049 (2d Dept. 2011) ......................................................................................26

*Falu v Seward & Kissel LLP*,
   2010 NY Slip Op 30528[U] (Sup. Ct. N.Y. Cnty 2010)...................................................14 *n.* 7

*Fincher v. Depository Trust & Clearing Corp.*,
   604 F.3d 712 (2d Cir. 2010)...............................................................................................16

*Flomenbaum v. New York Univ.*,
   71 A.D.3d 80 (1st Dept. 2009).............................................................................................29

*Gartenberg v. Cooper Union for the Advancement of Science & Art*,
   765 F. Supp. 3d 245 (S.D.N.Y. 2025)............................................................................... *passim*

*Giaimo & Vreeburg v. Smith*,
   192 A.D.2d 41 (2d Dept. 1993) ........................................................................................20

*Goldzweig v. Consol. Edison Co. of NY, Inc.*,
   No. 20 Civ. 4297, 2024 US Dist. LEXIS 223463 (S.D.N.Y. Dec. 10, 2024)..........................15

*Hamilton v. Siemens Healthcare Diagnostics, Inc.*,
   No. 23-CV-7408, 2025 US Dist. LEXIS 52886 (S.D.N.Y. Mar. 18, 2025) ......................15, 16

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993)................................................................................................................8

iv

*Hayut v. State Univ. of N.Y.*,
    352 F.3d 733 (2d Cir. 2003)...........................................................................................8, 13

*Heim v. Daniel*,
    81 F.4th 212 (2d Cir. 2023) ...................................................................................................26

*Holland v. City of Poughkeepsie*,
    90 A.D.3d 841 (2d Dept. 2011) ............................................................................................26

*Hotaling v. Martuscello*,
    24-cv-01216 (AMN), 2025 U.S. Dist. LEXIS 175304 (N.D.N.Y. Sept. 9, 2025).....................7

*Hu v. City of New York*,
    927 F.3d 81 (2d Cir. 2019)....................................................................................................20

*James v. Fed. Reserve Bank of N.Y.*,
    01-CV-1106 (RJD)(VVP), 2005 U.S. Dist. LEXIS 43493 (E.D.N.Y. Aug. 8,
    2005) .......................................................................................................................................9

*Keyishian v. Bd. of Regents of the Univ. of the State of N.Y.*,
    385 U.S. 589 (1967)...............................................................................................................12

*Klinge v. Ithaca Coll.*,
    244 A.D.2d 611 (3d Dept. 1997) .....................................................................................27, 29

*Kwong v. City of NY*,
    204 A.D.3d 442 (1st Dept. 2022)...........................................................................................17

*Lizardo v. Denny's, Inc.*,
    270 F.3d 94 (2d Cir. 2001).....................................................................................................20

*Maas v. Cornell Univ.*,
    94 N.Y.2d 87, 92 (1999) ........................................................................................................27

*Maldonado v. Allum*,
    208 A.D.3d 470 (2d Dept. 2022) ...........................................................................................25

*Manessis v. N.Y. City DOT*,
    2003 U.S. Dist. LEXIS 1921 (S.D.N.Y. Feb. 10, 2003)........................................................10

*Mangiafico v. Blumenthal*,
    471 F.3d 391 (2d Cir. 2006).....................................................................................................7

*Meisner v. Hamilton, Fulton, Montgomery Bd. of Coop. Educ. Servs.*,
    175 A.D.3d 1653 (3d Dept.' 2019).....................................................................................26, 27

*Novio v. N.Y. Acad. of Art*,
    317 F. Supp. 3d 803 (S.D.N.Y. 2018)...............................................................................21, 28

v

*Nungesser v. Columbia Univ.*,
    244 F. Supp. 3d 345 (S.D.N.Y. 2017)..................................................................................11

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998).............................................................................................................11

*Quiroz v. Zottola*,
    96 A.D.3d 1035 (2d Dept. 2012) .......................................................................................25

*R.L. v. Holland Cent. Sch. Dist.*,
    244 A.D.3d 1807 (4th Dept. 2025) ....................................................................................25

*Raghavendra v. Trustees of Columbia Univ.*,
    No. 06 Civ. 6841, 2008 U.S. Dist. LEXIS 51995 (S.D.N.Y. July 2, 2008) .............................9

*Ramirez v. Exclusive Mgmt. Sol. Grp., Inc.*,
    24-cv-01786 (MMG), 2025 U.S. Dist. LEXIS 234777 (S.D.N.Y. Dec. 2, 2025) .....................6

*Rodas v. Town of Farmington*,
    918 F. Supp. 2d 183 (W.D.N.Y. 2013) ...............................................................................15

*Signa v. Corozin Health Insurance*,
    2018 U.S. Dist. LEXIS 3326 (E.D.N.Y. 2018).................................................................13 *n.* 6

*Stembridge v. City of New York*,
    88 F. Supp. 2d 276 (S.D.N.Y. 2000)..................................................................................10

*Syncora Guarantee Inc. v. JP Morgan Sec., LLC*,
    110 A.D.3d 87 (1st Dept. 2013)......................................................................................28 *n.* 13

*Talavera v. Arbit*,
    18 A.D.3d 738 (2d Dept. 2005) ........................................................................................25

*Tong v. Target, Inc.*,
    83 A.D.3d 1046 (2d Dept. 2011) .......................................................................................19

*Yerdon v. Henry*,
    91 F.3d 370 (2d Cir. 1996)...............................................................................................18

*Zeno v. Pine Plains Cent. Sch. Dist.*,
    702 F.3d 655 (2d Cir. 2012).............................................................................................12

vi

## PRELIMINARY STATEMENT

Defendant Albany Law School of Union University ("Albany Law") respectfully submits this memorandum of law in support of its motion to dismiss plaintiff Rowland A. Rupp's ("Rupp" or "Plaintiff") Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). For the reasons set forth more fully herein, this action should be dismissed in its entirety as Plaintiff's claims are both legally and procedurally deficient as a matter of law.

## STATEMENT OF FACTS[1]

### A. The January 13, 2025 Incident

On the morning of January 13, 2025, Plaintiff, who was then a second-year law student at Albany Law, attended the first session of an International Children's Rights ("IRC") course taught by Professor Anthony Farley ("Prof. Farley"), a tenured member of Albany Law's faculty. Compl. ¶¶ 1-2, 21.[2]

According to Plaintiff, during this class, Prof. Farley delivered commentary on topics including the historical significance of September 11, the Founding Fathers, and American conservatism. Compl. ¶ Sec. A, ¶ 23. Plaintiff alleges these comments included statements that conservatives "hate everyone — blacks, women, gays," that the Founding Fathers were "worse than Hitler," and that "a conservative wants to conserve the past, so they want to conserve slavery." Compl. ¶¶ 3–4, 23. Rupp alleges that these remarks targeted "white conservative students" and describes Prof. Farley's commentary as "framing political identity" in "racially coded" terms. Compl. ¶¶ 4–5, 23–24, 28, 61, 90, 155.

---

[1]    This statement of facts is primarily drawn from the allegations in the Complaint. Albany Law's recitation of such facts does not constitute an acknowledgment or admission as to the accuracy of such allegations.

[2]    The Complaint has duplicated paragraph numbers (*e.g.* ¶¶ 21-23 appearing twice pp.8-9).

1

As directed towards Rupp, individually, he alleges Prof. Farley asked whether any students hunted, to which Rupp raised his hand. Compl. ¶ 23(e). Thereafter, Prof. Farley allegedly responded with a remark referencing Rupp's attire – "Of course the guy with the hat hunts" – and continued discussing what "conservatives look like." *Id*. at 23(e)-(f). Plaintiff alleges that he perceived these comments as directed at him. Compl. ¶ 24.

After approximately thirty minutes, mid-class, Rupp gathered his belongings and departed the classroom. Compl. ¶ 25. Rupp alleges that before leaving, he approached Prof. Farley at the front of the classroom, "placed his hand on Farley's shoulder," made a parting statement, and exited the classroom. Compl. ¶¶ 26–27. "Immediately after leaving the classroom," Rupp, on his own accord, "went to the School's administrative offices to drop the course." Compl. ¶ 9.

**B. <u>Alleged Prior Pattern of Conduct</u>**

The Complaint alleges, upon information and belief, a broader pattern of alleged conduct by Prof. Farley (none of which has any relation to Rupp), that Rupp claims was "brought to the attention of Albany Law School administrators well before January 2025." Compl. ¶¶ 8, 30–34, 109–133.  For example, Rupp alleges that Prof. Farley routinely departed from course material to deliver extended monologues containing politically and racially charged commentary. Compl. ¶¶ 8, 31–33. Furthermore, Plaintiff claims that Prof. Farley's conduct extended beyond the classroom to issues involving other faculty members and that Albany Law had notice of Prof. Farley's "extreme political bias." Compl. ¶ 137.

2

C. **The Competing Complaints and Initiation of Disciplinary Proceedings**

      1.   *Rupp's Purported Complaint Against Farley*

On January 14, 2025, Rupp claims that he reported the January 13th classroom conduct of Prof. Farley to Associate Dean for Academic Affairs Rosemary Queenan ("Dean Queenan"), and "lodged a complaint against Professor Farley[] for his harassing classroom behavior." Compl. ¶¶ 36–37. Yet, Rupp also alleges in his Complaint that both Dean Queenan and Dean Taranto explained to him on March 28, 2025, over 2 months after he allegedly "lodged a complaint" against Prof. Farley, that when he previously met with them, he had not expressed a desire to file a complaint against Prof. Farley. Compl. ¶¶ 50-55. More specifically, Dean Queenan stated, "[w]hen we met, you did not indicate a request to file a formal complaint" and Dean Taranto stated "[w]hen you and I met, you did not indicate to me that you wanted to file a complaint of any kind." *See* Declaration of Stuart Klein ("Klein Dec."), dated May 11, 2026 at Ex. B.

After learning that Rupp wanted to file a formal complaint against Prof. Farley, Albany Law referred the matter to Odelia Levy ("Ms. Levy"), Albany Law's Title IX Coordinator. Compl. ¶ 57. By email dated April 11, 2025, from Ms. Levy to Rupp, which is referred to in paragraph 58 of the Complaint, Ms. Levy stated in pertinent part as follows: "When we met, you described allegations of harassment in connection with political views as well as allegations of harassment in connection with hunting and dress associated with hunting. Per our conversation, you indicated that you did not perceive the allegations to be directly or indirectly connected with any of the legally protected characteristics listed" in Albany Law's Student Policy on Harassment, Sexual Assault & Relationship Violence." Klein Dec. Ex. C. Ms. Levy went on to state that "[b]ased on the information provided, the alleged behavior falls outside the purview of

3

this office because, even if true, the alleged misconduct would not result in a violation of this specific Policy." *Id.; see* also Compl. ¶ 76.

Thereafter, Rupp's complaint was separately referred to Albany Law's Harassment Committee. By written notice dated September 25, 2025, which is referred to in paragraph 76 of the Complaint, Rupp was informed that since Prof. Farley's "alleged conduct neither stemmed from nor was connected to any of the protected areas in the school's harassment policy (race, creed, color . . . ) the sub-committee has concluded that your report does not fall under our Student Policy on Harassment and we have no jurisdiction to consider or investigate it further." Compl. ¶¶ 76–77; *see also* Klein Dec. Ex. D. There are no allegations in the Complaint that Rupp did anything further to pursue any action against Prof. Farley.

        2.   *Prof. Farley's Complaint Against Rupp*

On January 14, 2025, the day after Rupp placed his hand on Prof. Farley, Prof. Farley "sent an email to Dean Cinnamon Carlarne and other Albany Law School administrators instituting his own complaint against Mr. Rupp." Compl. ¶ 38. Plaintiff alleges, solely upon information and belief, that Prof. Farley filed his complaint in direct response to him learning of Rupp's complaint – a complaint both Deans Queenan and Taranto indicated that that they were unaware of. Compl. ¶ 38; Klein Dec. Ex. B.

Prof. Farley's complaint against Rupp involved multiple steps over a period of approximately nine months. This process culminated before Albany Law made a final determination as to what disciplinary action to take, when Rupp, on October 23, 2025, entered into a Stipulation of Undisputed Facts and Settlement (the "Settlement") with Albany Law. Klein Dec. Ex. E. Rupp never mentions the Settlement in his 56 page, 207 paragraph, Complaint.

4

### D. **The Settlement**

As set forth above, prior to the adjudication of the disciplinary charges against him, Rupp entered into a formal, written settlement, with Albany Law. The Settlement, which Rupp swore to the accuracy of, states that his "██████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████" *Id.* As part of the Settlement, Rupp also agreed to issue a "████████████████" to Prof. Farley in which he admitted to making "physical contact" with Prof. Farley and acknowledged that his "actions were inappropriate, unprofessional, and inconsistent with the standards expected of me." *Id.* at Ex. F. Rupp further stated that he "understand[s] that the legal profession demands composure, respect for others, and adherence to clear standards of interpersonal conduct [and that his] actions on that day did not meet those expectations." *Id.*

### E. **Rupp's Post-Settlement Related Lawsuits**

On December 14, 2025, Rupp filed a defamation lawsuit against Prof. Anthony Farley in New York State Supreme Court, Albany County (Index No. 913255) ("Defamation Case"). In the Defamation Case, which Albany Law is not a party to, Rupp alleged certain statements Prof. Farley made about him, both orally and in writing, constituted defamation *per se*. On April 19, 2025, Prof. Farley filed a motion for anti-SLAPP dismissal and summary judgment, and also is seeking attorneys' fees and punitive damages.

Following the filing of the Rupp Defamation Case, Rupp commenced this action on January 8, 2026. The very next day, Rupp commenced a hybrid CPLR Article 78 proceeding / declaratory judgment action against Albany Law in New York State Supreme Court, Albany

5

County (Index No. 900466) ("Rupp Art. 78 Proceeding").[3]  On April 14, 2026, Albany Law filed a motion to dismiss, arguing, in part, that because of Rupp's Settlement with Albany Law, there is no final and binding determination that is ripe for Article 78 review.

In these three (3) post-Settlement lawsuits, Rupp has asserted overlapping claims which contain inconsistent factual allegations – the inconsistencies which cannot be ignored by this Court in adjudicating Albany Law's motion to dismiss.

<h2 style="text-align:center"><u>STANDARD OF REVIEW</u></h2>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Plausibility requires factual content allowing the court to draw a reasonable inference of liability. *Ramirez v. Exclusive Mgmt. Sol. Grp., Inc.*, 24-cv-01786 (MMG), 2025 U.S. Dist. LEXIS 234777, at *7-8 (S.D.N.Y. Dec. 2, 2025) (citing *Ashcroft*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 558).

---

[3]     When Rupp commenced the Article 78 Proceeding, he filed the case as "John Doe," seeking to have his identity shielded from the public record.  Albany Law challenged this designation and ultimately Rupp agreed to replace the "John Doe" designation with his actual name.

6

**CONSIDERATION OF EXTRINSIC EVIDENCE ON MOTION TO DISMISS**

In considering a motion to dismiss, a court is typically restricted to considering whether the allegations, as contained within the four corners of the complaint (and any attachments thereto), are well-pled. But where, as here, a complaint references specific communications that are integral to plaintiff's claims, the court may consider those communications as well in deciding whether a plaintiff's claims should survive a motion to dismiss. *See*, *e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 397-398 (2d Cir. 2006); *see also Hotaling v. Martuscello*, 24-cv-01216 (AMN), 2025 U.S. Dist. LEXIS 175304, *8 (N.D.N.Y. Sept. 9, 2025) ("Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are 'integral' to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings").

Applying these principles, the following documents[4] are properly before the Court on this motion and are referenced herein:

1.    Albany Law's Student Handbook.

2.    March 27, 2025 email from Rupp to Deans Taranto and Queenan, as well as the March 28, 2025 responses from both Deans.

3.    Ms. Levy's April 11, 2025 written determination to Rupp.

4.    Harassment Subcommittee's September 25, 2025 determination letter.

5.    The October 23, 2025 Settlement and Rupp's apology letter to Prof. Farley.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S HOSTILE EDUCATION ENVIRONMENT CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM**

---

[4]    No dispute can exist as to the authenticity of any of these documents as these are all documents that Rupp received, authored, acknowledged and/or relied upon throughout his Complaint.  These documents are exhibits to the May 11, 2026 Declaration of Stuart Klein.

To state a plausible Title VI hostile educational environment claim, a plaintiff must adequately plead:

> (1) The plaintiff was subject to severe or pervasive harassment; (2) The harassment was motivated, at least in part, by the plaintiff's race, color, or national origin; (3) The institution had actual knowledge of the harassment and the ability to exercise substantial control over the harasser; (4) The institution was deliberately indifferent to the harassment; and (5) The harassment deprived the plaintiff of educational benefits or opportunities. *Gartenberg v. Cooper Union for the Advancement of Science & Art*, 765 F. Supp. 3d 245, 259 (S.D.N.Y. 2025).

Plaintiff's complaint fails to plead the elements — each of which provides an independent basis for dismissal.

## A. The Isolated Incident Was Not Severe or Pervasive

To satisfy the severity or pervasiveness prong, harassment must be "sufficiently severe or pervasive to alter the conditions of [the plaintiff's educational experience]." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Courts evaluate this standard by examining "the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's academic performance." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003). Critically, "[a]s a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (*citation and internal quotation marks omitted*). "[I]solated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id*.

The entirety of Rupp's claim rests on a single class session — one he attended voluntarily, in which no physical threat was made against him, and from which he exited the classroom on his own accord after approximately thirty minutes. Compl. ¶¶ 9, 25-27. This was the first — and only — IRC class Rupp ever attended, and the first and only interaction Rupp had with Prof. Farley. The sole comment directed at Rupp individually was a remark about his

8

attire. Compl. ¶ 5. Indeed, Rupp's admissions in the Settlement, coupled with his statements to Ms. Levy, reflect that his complaint about Prof. Farley was framed as one of being "picked on" based on his "dress" and "hunting" activities — not based on his race or any other protected characteristic.  *See* Klein Dec. Ex. E.  It was only after Rupp retained legal counsel did his theory switch to a "race based" theory – a theory that is contradicted by his prior representations.

Prof. Farley's classroom remarks, however offensive Rupp found them, consisted of sweeping political and social commentary.  Compl. ¶¶ 3-4. These were generalized ideological claims directed at a political class, not targeted racial harassment aimed at Rupp as an individual white student. The only arguably individualized comment — "Of course the guy in the hat hunts" — singled out Rupp's attire and apparent recreational interests, not his race. Compl. ¶¶ 5, 23.  This is confirmed in the Settlement, where Rupp states that the reason he left Prof. Farley's class was because his lecture "████████████████████████████████████████ ████████████████████████████████████████████ "  Klein Dec. Ex. E.

These allegations fall squarely within the category of "episodic" conduct that courts in this Circuit consistently hold insufficient to establish a hostile environment. In *Raghavendra* the court dismissed a hostile environment claim resting on sparse, episodic allegations spread over four years — including specific racial comments, a racial epithet, and differential treatment. *Raghavendra v. Trustees of Columbia Univ.*, No. 06 Civ. 6841, 2008 U.S. Dist. LEXIS 51995, at *23-25 (S.D.N.Y. July 2, 2008); *James v. Fed. Reserve Bank of N.Y.,* 01-CV-1106 (RJD)(VVP), 2005 U.S. Dist. LEXIS 43493 at *7 (E.D.N.Y. Aug. 8, 2005) (plaintiff's allegation that supervisor called her "heifer"  and "slut" insufficient to establish severe or pervasive standard); *Bailey v. Colgate-Palmolive Co.*, 99 Civ. 3228 (CBM), 2003 U.S. Dist. LEXIS 8175 at *22-23 (S.D.N.Y. May 14, 2003) (plaintiff's exposure over a ten-year period to racist harassment held

9

insufficient to constitute a hostile environment where such incidents were sporadic); *Stembridge v. City of New York*, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) (seven instances over three years does not create an environment permeated with racial hostility). If many years of blatantly racist incidents did not suffice, a single thirty-minute class session cannot.

The contrast with cases where courts have found plausible hostile environment claims is instructive and stark. In *Gartenberg*, the court found a plausible hostile environment claim based on a sustained, multi-month campaign that included: demonstrators physically blockading Jewish students inside a study room, protestors surrounding and physically intimidating Jewish students, acts of vandalism, and a pattern of "fear-inducing conduct" across the campus. 765 F. Supp. 3d at 271. Similarly, in *Banks v. GM LLC.*, F.4th 258, 263 (2d Cir. 2023), conduct was deemed "extraordinarily severe" because it involved a "loud and aggressive" verbal altercation with a "physically threatening demeanor" that caused bystanders to fear for the plaintiff's safety. None of those features are present here. Rupp was not physically threatened, not blocked from any space, not surrounded by a group, and not subjected to a sustained pattern of harassment across weeks or months. He attended one class, found Prof. Farley's remarks offensive, and left by choice. Compl. ¶¶ 9, 25-27. That is precisely the kind of episodic, non-severe conduct that falls below Title VI's threshold. *See Cain v. Mercy College*, 2020 U.S. Dist. LEXIS 128263, at *19-20 (S.D.N.Y Jul. 20, 2020) (*quoting Manessis v. N.Y. City DOT*, 2003 U.S. Dist. LEXIS 1921, at *6 (S.D.N.Y. Feb. 10, 2003). ("Single incidents, unless very serious, generally do not satisfy the necessary requirement of severity or pervasiveness."). Accordingly, this claim should be dismissed as a matter of law.

10

**B. Plaintiff Cannot Establish Conduct Was Motivated By His Race**

A Title VI plaintiff must also plead that the harassment was motivated, at least in part, by the plaintiff's race. *Gartenberg*, 765 F. Supp. 3d at 259. This element requires more than an allegation that a plaintiff belongs to a protected racial group and experienced unpleasant treatment, the plaintiff must establish that the treatment was "because of" race. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Courts are clear that "the ultimate issue is the reasons for the individual plaintiff's treatment." *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 362-63 (S.D.N.Y. 2017) (*citation and internal quotation marks omitted*).

The Complaint is replete with references to Rupp's political identity — his appearance, his hat, his hunting interests, his association with conservative politics — as the basis for Prof. Farley's remarks. Compl. ¶¶ 2-8, 23, 27-28. The Complaint itself characterizes Prof. Farley's commentary as targeting "white conservative students" and "framing" political disagreement in racially "coded" terms. *Id*.; Compl. ¶¶ 61, 65, 176. But Title VI does not prohibit discrimination on the basis of political identity. Under Rupp's theory, any politically charged classroom discussion that associates one racial group with a political ideology would constitute *per s*e racial discrimination. That cannot be the law. Courts have recognized that "speech on public matters is inherently less likely to create a hostile environment than speech on private matters." *Gartenberg*, 765 F. Supp. 3d at 261-62.

The absence of any race allegation from Rupp's own sworn Settlement, in which he admits that he "███████████████████████████" is telling. Rupp states in the Settlement that he left Prof. Farley's class because it "████████████████████████████████ ███████████████████████████████████████████ ██████████" See Klein Dec. Ex. E. Race is not mentioned. If Rupp genuinely believed that race

11

motivated Prof. Farley's conduct, one would expect him to have said so, under oath, when given the opportunity to provide his own account. He did not. Rupp's sworn Settlement stands in stark contrast to the Complaint, which is not sworn. Where a plaintiff's own contemporaneous sworn statements contradict his litigation-driven federal pleadings, the sworn statements control. *Am. Pharm. Servs. Inc. v. Wing*, 259 A.D.2d 923, 925 (3d Dept. 1999).

Having failed to establish harassment because of race, Rupp's claim should be dismissed.

### C. Plaintiff Fails To Establish Deliberate Indifference

Even if Rupp could establish the first two elements—which he has not—the claim still fails to establish deliberate indifference. An institution may only be held liable for harassment if its response was "clearly unreasonable in light of the known circumstances." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012). This standard is not satisfied by the mere fact that an institution's response was imperfect, delayed, or ultimately unsuccessful. Deliberate indifference requires conduct that is "clearly unreasonable" — a demanding standard specifically designed to avoid second-guessing institutional judgment in the educational context. *Id*. Where an institution's alleged indifference consists of its failure to punish protected speech or political expression, the First Amendment and principles of academic freedom impose a separate and significant constraint on liability. As the *Gartenberg* court held: "it will usually be difficult — if not impossible — to show that a college or university acted in a clearly unreasonable manner under Title VI where its acts of alleged deliberate indifference consist of its refusal to punish political speech directed at the college community." 765 F. Supp. 3d at 267. The Supreme Court has long held that academic freedom is "a special concern of the First Amendment." *Keyishian v. Bd. of Regents of the Univ. of the State of N.Y.*, 385 U.S. 589, 603 (1967).[5]

---

[5] The First Amendment tolerates neither laws nor other means of coercion, persuasion or intimidation "that cast a pall of orthodoxy over the free exchange of ideas in the classroom." *Keyishian*, 385 U.S. at 603.

Much of what Prof. Farley said, however offensive it may be perceived, constitutes speech on matters of public concern: the history of American slavery, the ideology of conservatism, the legacy of colonialism and the CIA. "Speech on matters of 'public concern' — expression that can 'be fairly considered as relating to any matter of political, social, or other concern to the community' — is 'entitled to special protection under the First Amendment.'" *Gartenberg*, 765 F. Supp. 3d at 262 (*internal citations omitted*). A court "must defer to colleges' decisions to err on the side of academic freedom." *Id*. In fact, the Albany Law's Handbook reflects a deliberate policy choice to protect academic freedom. *See* Klein Dec. Ex. A at pgs. 125-126.

Rupp attempts to bolster his thin account of the January 13th events with allegations of a broader "pattern and practice" of racially charged classroom conduct by Prof. Farley spanning years. Compl. ¶¶ 30-31, 109-147. These allegations are asserted largely on "information and belief," are devoid of specific facts and have no relevance to the events in question.[6] Compl. ¶¶ 30-31, 111. Such speculative allegations are exactly the kind of conclusory "formulaic recitation" that *Iqbal* and *Twombly* require courts to disregard. *Id*.

### D. Plaintiff Cannot Demonstrate Deprivation of Educational Benefits

Finally, Rupp must ultimately show that the alleged harassment effectively denied him equal access to the institution's resources and opportunities. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999). The Second Circuit has held that harassment must actually interfere with the plaintiff's educational experience in a meaningful way — not merely cause discomfort or displeasure. *Hayut*, 352 F.3d at 750.

---

[6]    Under the pleading standards of *Ashcroft* and its progeny, allegations based "upon information and belief" are insufficient to state a viable cause of action unless they are accompanied by a statement as to the basis for the belief. *See, e.g.*, *Signa v. Corozin Health Insurance*, 2018 U.S. Dist. LEXIS 3326 (E.D.N.Y. 2018) ("Alleging something 'upon information and belief' does not suffice to allege a fact under *Iqbal* and *Twombly* unless plaintiff can point to some facts that make the allegations more than pure speculation").

23440299.v4-5/11/26

Plaintiff's own allegations undermine this element. He attended one class and then voluntarily chose to drop the class after only 30 minutes. Compl. ¶¶ 9, 23-27. His withdrawal from one elective — prompted by his own decision to leave — does not constitute denial of educational benefits. Rupp was free to, and did, continue his legal education at Albany Law. The harm he pleads is, at bottom, the loss of a single course he chose not to complete. Compare this to the deprivation recognized in *Hayut*, where harassment that "discouraged plaintiff from more active involvement in campus activities" and "created a disparately hostile educational environment relative to her peers" was found sufficient. 352 F.3d at 750. Rupp does not allege he was deterred from campus involvement, that he felt unwelcome in other courses, or that the January 13th incident had any ongoing effect on his broader educational experience beyond dropping the course. That is categorically insufficient. In fact, in his Article 78 Proceeding, Rupp alleges that he "remains a law student in good academic and disciplinary standing at Albany Law." Klein Dec. Ex. H at ¶ 10. Accordingly, Plaintiff's claim must be dismissed.

## POINT II

## PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION[7]

A plaintiff asserting retaliation under Title VI or 42 U.S.C. § 1981 must plausibly allege: (1) that he engaged in protected activity; (2) that the defendant was aware of that activity; (3) that the defendant took a materially adverse action against him; and (4) that a causal connection exists between the protected activity and the adverse action. *Bloomberg v. NY City Dept. of Educ.*, 119 F.4th 209, 215 (2d Cir. 2024).

---

[7] Plaintiff's Second and Fourth Causes of Action assert retaliation claims under Title VI of the Civil Rights Act of 1964, and 42 U.S.C. § 1981, respectively. *See* Compl. ¶¶ 166–173, 181–191. The elements and analytical framework governing retaliation under both statutes are substantially identical in the Second Circuit, and the claims are therefore addressed together. *See, e.g.,Falu v Seward & Kissel LLP*, 2010 NY Slip Op 30528[U], *9 (Sup. Ct. N.Y. Cnty 2010); *Matter of Cagino v. N.Y. State Div. of Human Rights*, 217 A.D.3d 1237, 1240 (3d Dept. 2023).

### A.  Plaintiff Did Not Engage in Protected Activity

Protected activity requires that a complaint be sufficiently specific to place the institution on notice that the plaintiff believed he was subjected to unlawful discrimination based on a protected characteristic. *Hamilton v. Siemens Healthcare Diagnostics, Inc.*, No. 23-CV-7408, 2025 US Dist. LEXIS 52886, at *32 (S.D.N.Y. Mar. 18, 2025); *Goldzweig v. Consol. Edison Co. of NY, Inc.*, No. 20 Civ. 4297, 2024 US Dist. LEXIS 223463, at *23 (S.D.N.Y. Dec. 10, 2024); *Rodas v. Town of Farmington*, 918 F. Supp. 2d 183 (W.D.N.Y. 2013).

Here, Rupp admits there is a genuine dispute as to whether he, following the January 13th IRC class, actually expressed a desire to pursue a complaint against Prof. Farley.  Rupp claims that on January 14th he notified Albany Law of his desire to pursue a complaint against Prof. Farley, yet Rupp's own pleadings confirm in March 2025, Dean Queenan and Dean Taranto informed Rupp that it was their understanding that he had not indicated a desire to file a complaint against Prof. Farley. *See* Compl. ¶¶ 37, 53-54; *see* Klein Dec. Ex. B. Thereafter, upon learning of Rupp's desire to pursue a complaint against Prof. Farley, the matter was referred to Albany Law's Title IX Coordinator, who documented that Rupp stated that Prof. Farley's conduct "neither stemmed from nor was connected to any of the protected areas in the school's harassment policy," including race. *See* Compl. ¶ 76; *see* Klein Dec. Ex. C.

Only now, after retaining legal counsel, despite contrary statements that he made to Albany Law and in his own sworn Settlement, Rupp characterizes Farley's classroom remarks as racist. *See* Compl. ¶¶ 61, 65, 176. But the Complaint itself repeatedly conflates race with political ideology and appearance, describing the conduct at issue instead as involving "political views," "political bias," "hunting and dress associated with hunting," and purportedly "racially coded" language tied to Plaintiff's appearance. *See* Compl. ¶¶ 59, 61, 137.  Generalized

15

objections to political commentary, academic discourse, or a professor's allegedly condescending tone—without more—do not constitute complaints of prohibited racial discrimination.[8] Nor can Rupp recast his January 14th meeting with Dean Queenan as protected activity based on race. To qualify as such, a complaint must be articulated with sufficient specificity to place the institution on notice that discrimination based on a protected characteristic—here, race—is being alleged. *Hamilton*, 2025 US Dist. LEXIS 52886, at \*32. Plaintiff's own admissions and sworn statements foreclose that showing. *See* Compl. ¶¶ 59, 61, 137; *see* Klein Dec. Exs. E and F.

### B. Plaintiff Fails to Allege a Cognizable Materially Adverse Action

Even assuming *arguendo* that Rupp engaged in protected activity, the Complaint identifies no materially adverse action sufficient to sustain a retaliation claim. The anti-retaliation law "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Bailey v. N.Y. Law Sch.*, 2019 U.S. Dist. LEXIS 163669, at \*18 (S.D.N.Y. Sep. 24, 2019). Rupp alleges two categories of supposedly adverse action: (i) the School's failure to investigate his complaint against Farley, and (ii) the School's initiation and prosecution of disciplinary charges against him. Neither qualifies.

*First*, the failure to investigate a discrimination complaint cannot itself constitute an adverse action taken in retaliation for that same complaint. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 715 (2d Cir. 2010). "Affirmative efforts to punish a complaining party are at the heart of any retaliation claim." *Id.* A student whose complaint was not acted upon cannot transform that inaction into the retaliatory response to the very complaint that was not investigated — that is a logical impossibility. *Id.* Thus, Rupp's grievance that Albany Law

---

8    *Gartenberg*, 765 F. Supp. 3d at 35 (a reasonable person should distinguish between the abstract expression of offensive "values, politics, and attitudes" on the one hand, and "remarks that genuinely target and harass" individuals on the other . . . especially in a higher education setting where the student expects the unfettered exchange of ideas on controversial topics).

16

allegedly failed to pursue his harassment complaint against Prof. Farley cannot, as a matter of law, support a retaliation claim premised on that same complaint.

*Second*, the initiation and prosecution of disciplinary proceedings against Rupp, without more, does not constitute a materially adverse action. *Kwong v. City of NY*, 204 A.D.3d 442, 443 (1st Dept. 2022) ("An investigation and a disciplinary letter, without more, were not enough to constitute actionable discriminatory or retaliatory conduct."). The disciplinary process here was initiated as a direct response to Rupp's own conduct — specifically, his admitted physical contact with Prof. Farley, without consent. *See* Compl. ¶¶ 7, 10–11. Initiating a safety-related disciplinary inquiry in response to a student's physical contact with a professor is a standard institutional protocol, not retaliation – and is consistent with the school's outlined policy on prohibited physical contact. *See* Klein Dec. Ex. A at § IX(III) and X; *DuBois v. Brookdale Univ. Hosp. & Med. Ctr.*, 2004 N.Y. Slip Op 51819[U], *6 (Sup. Ct. Kings Cnty 2004) (dismissal of retaliation claim proper where documentary evidence showed defendants were acting in the discharge of their duties and that plaintiff was disciplined as a result of her misconduct and not as a result of discrimination).

*Third*, and critically, Rupp voluntarily entered a Settlement with Albany Law to resolve the disciplinary proceeding against him, represented under oath that his academic standing was preserved, and expressly set forth his desire not to disturb the Settlement. *See* Klein Dec. Ex. E. Further, because Albany Law's disciplinary process against Rupp was settled before final adjudication, there is no clear injury or harm required for a retaliation claim. Where a plaintiff voluntarily settles the very proceeding he claims was retaliatory and swears under oath that no adverse academic consequence resulted, he cannot plausibly allege the concrete injury or harm that federal anti-retaliation law requires. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

17

67 (2006); *see also Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996) (dismissing claim because internal charges did not constitute retaliation where charges had not yet been adjudicated and plaintiff had therefore not suffered any adverse effect from them).

### C. No Causal Nexus Between Any Protected Activity and the Alleged Adverse Action

Rupp's attempt to establish causation similarly fails. As pleaded, the disciplinary process against Rupp was commenced as a result of Prof. Farley's complaint which was based upon Rupp's admitted, nonconsensual, physical contact with him. *See* Compl. ¶¶ 11, 38. As discussed *supra*, Plaintiff has not adequately pleaded that he engaged in a protected activity when he allegedly complained to Albany Law about Prof. Farley's conduct on January 14th. A disciplinary process that was already in motion before Plaintiff made any protected complaint cannot have been caused by that complaint. *Barcellos v. City of New York*, No 157998/2018, 2024 NY Misc. LEXIS 4688, *35 (Sup. Ct. NY Cnty June 4, 2024).

Plaintiff alleges that Prof. Farley's complaint was retaliatory, but that assertion is unsupported by the pleaded facts and rests solely on speculation asserted "upon information and belief." *See fn*. 6; *See* Compl. ¶ 38. In any event, Plaintiff affirmatively pleads that he physically touched Farley during the classroom encounter and admits in the Settlement that "█████████ ██████████████████████████████████████████████ ███████████████████████████████" Compl. ¶¶ 7, 14, 26; Klein Dec. Ex. E. Thus, irrespective of the precise sequence of complaints, the disciplinary process was triggered by Rupp's own admitted conduct, not by any complaint he lodged about Prof. Farley. Klein Dec. Ex. F; *Dortch v. New York City Dep't of Educ.*, 2016 U.S. Dist. LEXIS 39646 (E.D.N.Y. Mar. 23, 2016) (inference of retaliation is defeated when an intervening event independently justifies the

18

adverse action). Where, as here, the adverse action preceded the protected activity, or was set in motion independently of it, the required causal nexus is absent as a matter of law.

Moreover, Rupp's own parallel litigation is internally inconsistent in a manner that independently forecloses causation. In the Rupp Defamation Case he characterizes the disciplinary proceeding as a product of Farley's individual "retaliatory plan." *See* Klein Dec. Ex. G at ¶ 10.Yet in this federal action, Plaintiff attributes the same conduct to Albany Law acting in institutional bad faith. A plaintiff cannot simultaneously attribute the same conduct to two different actors for purposes of two different lawsuits.[9] If the disciplinary process was Prof. Farley's private and falsified retaliatory scheme — as Plaintiff attested to in the Rupp Defamation Case — then Albany Law cannot be accused of retaliation in their good faith investigation of such complaint for purposes of Rupp's federal lawsuit.  Accordingly, Rupp's retaliation claims should be dismissed as a matter of law.

### POINT III

### PLAINTIFF FAILS TO STATE A CLAIM FOR DENIAL OF EQUAL RIGHTS

To establish a claim under 42 U.S.C. § 1981, a plaintiff must plead facts sufficient to support: (1) that he is a member of a racial minority; (2) that the defendant intended to discriminate against him on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. *Tong v. Target, Inc.*, 83 A.D.3d 1046, 1047 (2d Dept. 2011); *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). The activities enumerated in § 1981 protect the right to "make and enforce contracts," which Congress clarified to encompass the making, performance, modification, or termination of contracts, or the

---

[9]    A party is prohibited from "framing his pleadings in a manner inconsistent with a position taken in a prior proceeding. The doctrine rests upon the principle that a litigant should not be permitted to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise." *Anonymous v. Anonymous*, 137 A.D.2d 739, 741 (2d Dept. 1988) (*internal citations omitted*).

19

enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b). Where an alleged act of discrimination does not involve the impairment of one of these specific enumerated rights, § 1981 provides no relief. *Giaimo & Vreeburg v. Smith*, 192 A.D.2d 41, 43 (2d Dept. 1993). Further, a plaintiff bears the burden — at every stage of litigation, including at the pleading stage — to prove that, but for race, he would not have suffered the loss of a legally protected right. *Comcast Corp. v. National Ass'n of African American-Owned Media*, 589 U.S. 327, 333 (2020). This but-for causation standard is constant and cannot be satisfied by allegations of mere motivation; race must be the determinative cause. The Second Circuit further requires that a § 1981 plaintiff must allege at least one instance of being treated differently from a similarly situated non-minority. *Hu v. City of New York*, 927 F.3d 81, 101 (2d Cir. 2019). A jury cannot infer discrimination from thin air. *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001).

Plaintiff advances two distinct sub-theories in support of this claim. First, Rupp alleges that Prof. Farley's classroom conduct created a racially hostile educational environment that impaired his contractual right to receive educational services on equal terms. Second, Rupp alleges that the subsequent disciplinary process — which arose from Prof. Farley's independent complaint against him — was administered in a racially discriminatory manner that further impaired his contractual rights. Both theories fail.

### A. Neither Sub-Theory Implicates an Enumerated Contractual Right

To plead a § 1981 claim in the educational context, a student must identify specific language in the school's bulletins, circulars, catalogues, or handbooks establishing the particular contractual right alleged to have been violated. *Novio v. N.Y. Acad. of Art*, 317 F. Supp. 3d 803, 810 (S.D.N.Y. 2018). A general statement of policy is not actionable. *Aubrey v. New Sch.*, 624 F.

20

Supp. 3d 403, 413 (S.D.N.Y. 2022). Rupp's claim fails at each stage at which a contractual right could be implicated: formation,[10] performance, termination, and enforcement.

Rupp contends that Prof. Farley's classroom remarks altered the terms and conditions of his educational experience and thereby impaired his contractual right to receive educational services free from racial harassment. Compl. ¶¶ 172–180. That theory fails because Albany Law's own Student Handbook—which Rupp invokes as the source of his alleged contractual rights—affirmatively permits the conduct he challenges. The Handbook expressly defines Albany Law as an academic community in which "vigorous intellectual exploration of the law and social policy is not only expected but demanded," and makes clear that its policies are "not intended to stifle or penalize honest intellectual exploration or debate. [11] *See* Klein Dec. Ex. A at pgs. 25-26. Most critically, it states unambiguously that "the fact that a person is offended by a statement or incident is not alone enough to constitute a violation of this policy." *Id.*

The Handbook's examples reinforce this distinction. It specifies that the policy would not prohibit speech opposing affirmative action, nor bar class discussions on controversial social issues—even if some students are offended by others' views. *Id.* These examples confirm that the threshold for a policy violation is not subjective offense, but conduct targeted at a specific individual based on a protected characteristic. Prof. Farley's remarks, even if discomforting to Rupp, fall squarely within the category of robust academic discourse the Handbook explicitly protects. Plaintiff alleges no racial slur, no explicit targeting by name, and no conduct that crosses the line from contentious classroom discussion into prohibited harassment. *See generally*

---

[10]    Plaintiff does not allege that race played any role in his ability to form a contract with Albany Law School.

[11]    The Handbook states that determining whether a violation occurred "depends on a consideration of the totality of the circumstances," including the context of the communication, the intent of the speaker, whether the conduct was isolated, and its effect on the learning community. It expressly reserves robust space for academic debate, stating the policy "is intended to protect members of the Albany Law School community from discrimination, not to regulate protected speech or limit academic freedom." *See* Klein Dec. Ex. A. pgs. 125-26.

23440299.v4-5/11/26

Complaint; *see also* Klein Dec. Ex E. (containing no allegation that race was at issue). Rupp cannot simultaneously rely on the Handbook as the source of enforceable contractual rights while disregarding the very provisions that authorize the conduct at issue.

Rupp also alleges that the disciplinary process itself was administered in a racially discriminatory manner, depriving him of his contractual right to fair process under the Student Handbook. Compl. ¶¶ 181-186. At the outset, a critical distinction must be drawn between the two competing complaints that arose out of the January 13th classroom incident.  The disciplinary process Rupp now challenges[12] as a "sham" and a "procedurally flawed" process was initiated in response to Prof. Farley's complaint against him — not the reverse. Compl. ¶185. This distinction is legally dispositive. Rupp concedes that he physically placed his hand on Prof. Farley's shoulder as he departed the classroom. Compl. ¶¶ 7, 26. The Handbook expressly identifies unwanted physical touching as an example of actionable physical harassment. *See* Klein Dec. Ex. A § IX, X. Albany Law was therefore obligated under its own written policies to initiate and process a disciplinary proceeding when a faculty member reported that a student had physically touched him. *Id*. The process that followed was the direct and inevitable consequence of Rupp's own admitted conduct. Because a legitimate, race-neutral basis, for the disciplinary process existed, and is admitted by Rupp himself, he cannot establish that the initiation of that process impaired any contractual right due to race.  Furthermore, Rupp admitted in the Settlement that he " ███████████████████████████████████ " Klein Dec. Ex. E.

To the extent Rupp contends that his withdrawal from the course constituted an unlawful termination of contract, that termination was entirely self-initiated. Rupp, on his own accord,

---

[12] To the extent Plaintiff claims he is challenging how Albany Law handled the complaint he filed against Prof. Farley, this argument should be foreclosed due to Rupp's failure to file an Article 78 proceeding challenging Albany Law's handling of his complaint. *See Infra* Point V.

gathered his belongings, exited the classroom, and elected to drop the course. Where the only termination is self-effected, no claim under § 1981 can arise. Nor was Rupp's contractual right to enforce the agreement impaired. Rupp was not denied access to the courts, to Albany Law's internal grievance procedures, or to any other avenue of redress. To the contrary, Rupp alleges that he promptly lodged a complaint with Albany Law administrators after the incident. Rupp's dissatisfaction with how Albany Law investigated, characterized, or resolved that complaint does not constitute an impairment of the right to enforce a contract under § 1981— particularly when Rupp never took any action to challenge Albany Law's administrative determination. At most, it reflects a disagreement with the adequacy of an institutional response—an issue properly addressed, if at all, through a CPLR Article 78 proceeding.

### B. Plaintiff Cannot Satisfy the But-For Causation Standard Under Either Sub-Theory

Even if Rupp could identify an enumerated contractual right that was impaired — which he cannot — his § 1981 claim fails independently because he cannot establish but-for racial causation under either sub-theory. *Comcast Corp.*, 589 U.S. at 341.

First, Prof. Farley's classroom remarks were directed at conservatives as a political category, not at white students as a racial group. Compl. ¶¶ 23, 27, 137. Rupp's own Complaint and sworn Settlement repeatedly conflate political identity with racial identity, treating criticism of conservatism as necessarily directed at white people as a race. That conflation is insufficient to plead intentional racial discrimination under § 1981. *See* Klein Dec. Ex. E and F (referencing Plaintiff's own sworn statements which did not raise racial animus). Political animus is not racial animus—and, at a minimum, it defeats any showing of but-for racial causation. The same defect is dispositive as it pertains to the handling of the disciplinary process.  Rupp admits that he placed his hand on Prof. Farley without consent, providing a complete, race-neutral basis for the

23

initiation of the disciplinary process. Where a legitimate, non-racial justification for the challenged action exists, and is conceded by the plaintiff himself, but-for causation cannot be established. The disciplinary process would have been initiated—indeed, was required to be initiated—regardless of Rupp's race.

Rupp also fails the Second Circuit's comparator requirement because he does not identify any non-white student who sat in Prof. Farley's class, engaged in comparable conduct or presented a comparable appearance, and was treated differently. Nor does he identify any non-white student who physically touched a faculty member and was subjected to a lesser or different disciplinary process. Instead, Rupp's comparator allegations are asserted entirely "upon information and belief," without identifying a single individual, incident, or factual basis. *See fn.* 6. Such speculative pleading—unsupported by any concrete factual allegations—is insufficient to support a plausible inference of discriminatory treatment.

### C.  Plaintiff Accepted the Outcome of the Disciplinary Process

Finally, even if the disciplinary process could be said to have implicated a § 1981 protected right — which it did not — Rupp's claim is independently foreclosed by his Settlement with Albany Law. *See fn.* 5; *see* Klein Dec. Ex. E.  A plaintiff cannot simultaneously accept an outcome as binding in one proceeding and pursue federal civil rights damages for that same outcome as an ongoing wrong in another. Because Rupp settled before any adverse outcome materialized (because Rupp agreed to the outcome), no cognizable injury was ever realized.

### POINT IV

### PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT SUPERVISION

Under New York law, "[g]enerally, where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of

24

*respondeat superior* and no claim may proceed against the employer for negligent hiring, retention, supervision or training." *Talavera v. Arbit*, 18 A.D.3d 738, 738 (2d Dept. 2005); *Quiroz v. Zottola*, 96 A.D.3d 1035, 1037 (2d Dept. 2012); *Coville v. Ryder Truck Rental*, 30 A.D.3d 744 (3d Dept.2006). This rule is not merely procedural, it is substantive. The tort of negligent retention is available only when an employee acts *outside* the scope of employment and the employer's negligence lies in having placed the employee in a position to commit harm. *R.L. v. Holland Cent. Sch. Dist.*, 244 A.D.3d 1807, 1809 (4th Dept. 2025). Where the employee acts within scope, that foundational element is absent. An act is within the scope of employment when it "is performed while the employee is engaged generally in the business of the employer, or if the act may reasonably be said to be necessary or incidental to such employment." *Maldonado v. Allum*, 208 A.D.3d 470, 471 (2d Dept. 2022). Teaching an assigned law school course is paradigmatically within the scope of a faculty member's employment.

Rupp's own Complaint makes this clear. He alleges that on January 13, 2025, Prof. Farley was teaching his assigned course, that he was an enrolled student who attended class that morning, and that the offensive comments were made during class instruction. Compl. ¶¶ 6–8. All of the alleged classroom conduct — whatever its character — occurred while Prof. Farley was doing exactly what Albany Law employed him to do: teach. That conduct was therefore within the scope of his employment as a matter of law. Moreover, New York's academic freedom regulation expressly recognizes the classroom as the locus of a faculty member's professional exercise. 8 N.Y.C.R.R. § 335.27 provides that "[i]t is the policy of the university to maintain and encourage full freedom, within the law, of inquiry, teaching and research" and that faculty "may, without limitation, discuss their own subject in the classroom." The Second Circuit has likewise held that a university professor is "paid — if perhaps not exclusively, then predominantly — to

25

speak, and to speak freely, guided by their own professional expertise, on subjects within their academic discipline." *Heim v. Daniel*, 81 F.4th 212, 227 (2d Cir. 2023). These principles reinforce that a professor's classroom instruction is an act within the scope of employment.

Because Rupp's negligent supervision and retention claim rests entirely on the January 13th classroom incident and because that conduct was within the scope of Prof. Farley's employment, the claim is barred as duplicative of any *respondeat superior* theory and must be dismissed. *See Eckardt v. City of White Plains*, 87 A.D.3d 1049 (2d Dept. 2011); *Holland v. City of Poughkeepsie*, 90 A.D.3d 841, 849 (2d Dept. 2011).

## POINT V

## PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

### A. Plaintiff's Breach of Contract Claim is Duplicative & Procedurally Improper

Rupp's fifth cause of action is expressly premised on Albany Law's alleged failure to follow the procedures set forth in its Handbook. Compl. ¶¶ 192–194. Under New York law — which governs the contractual relationship between a private university and its students — such claims may only be pursued by CPLR Article 78, not a plenary action. "The administrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are, for the most part, better suited to make relatively final decisions concerning wholly internal matters." *Meisner v. Hamilton, Fulton, Montgomery Bd. of Coop. Educ. Servs.*, 175 A.D.3d 1653, 1655 (3d Dept. 2019) (*internal quotations omitted*). Accordingly, "[c]ourts retain a restricted role in dealing with and reviewing controversies involving colleges and universities. In these so-called 'university' cases, CPLR article 78 proceedings are the appropriate vehicle . . . . Thus, a CPLR article 78 proceeding is the route for judicial review of such matters, not a plenary action." *Id.* Courts are equally clear that "when

23440299.v4-5/11/26

litigants fail to avail themselves of the CPLR article 78 avenue, courts may justifiably dismiss plenary claims premised upon alleged failures to follow applicable principles set forth in employee [or student] handbooks." *Id.* (citing *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999)); *Klinge v. Ithaca Coll.*, 244 A.D.2d 611, 613 (3d Dept. 1997) (dismissing on basis that "the host of internal administrative and academic determinations which he challenges are redressable, if at all, in an Article 78 proceeding, not a plenary action.").

Here, each alleged breach in the Complaint— the disclosure to the BLSA, the compromise of the Reporter's neutrality, and the charge escalation — is explicitly a challenge to the administration of Albany Law's own Chapter X procedures. Compl. ¶¶ 195–196. These are quintessential "university" claims reviewable only by Article 78. Rupp's own concurrent filing confirms this, as in the context of Rupp's pending Art. 78 Proceeding, he is seeking to challenge these very same things.  Though Albany Law maintains that an Article 78 proceeding is the proper vehicle to challenge such action, as argued in Albany Law's state court motion to dismiss, Rupp's Settlement with Albany Law, which came prior to any final and binding determination, moots his ability to pursue Article 78 relief.  Rupp cannot use the federal courts to get a second bite at the apple for claims he mooted by entering into a Settlement.

The same principle applies — with equal if not greater force — to Plaintiff's challenge to Albany Law's handling of his alleged complaint against Prof. Farley.  Though Rupp filed an Article 78 proceeding challenging the disciplinary process arising from Prof. Farley's complaint against him, Rupp never filed an Article 78 proceeding challenging Albany Law's handling of his own complaint against Prof. Farley. That deliberate omission is now fatal. Any such challenge was required to be brought by Article 78 — the exclusive avenue for review of a private university's internal administrative determinations — within the four-month statute of limitations

27

prescribed by CPLR § 217. Those limitations ran long ago. Rupp herein cannot now revive a time-barred, procedurally improper challenge to the handling of his own complaint against Prof. Farley, by recasting it as a federal cause of action.[13]

### B. Plaintiff Fails to Specify the Contractual Provision Allegedly Breached

To state a breach of contract claim in the university-student context under New York law, a plaintiff must identify a specific, concrete promise in the institution's published policies — not merely a general aspiration or a discretionary standard — and must show that the institution departed from that specific promise. Gartenberg, 765 F. Supp. 3d at 279-81; *see also Novio v. New York Acad. of Art*, 317 F. Supp. 3d 803, 813 (S.D.N.Y. 2018).

Rupp alleges in conclusory terms that Chapter X of the Handbook "guarantee[s]" confidentiality, neutrality, written notice, and basic procedural fairness. Compl. ¶ 194. But Rupp does not identify a specific provision of Chapter X that mandates a specific act or prohibits a specific act that Albany Law performed or failed to perform. Instead, Rupp's allegations are the type of broad process-based grievances that New York law recognizes as discretionary institutional judgments beyond judicial second-guessing. As the court in *Gartenberg* explained, a university's disciplinary policies "contemplate[] a substantial measure of discretion reserved to [the institution] for determining whether and to what extent to punish alleged violations of its policies." 765 F. Supp. 3d at 279-81. Accordingly, "mere allegations of a failure to impose a particular form of discipline in a given case is not sufficient to state a claim for breach of the

---

[13]    Even setting aside the Article 78 exclusivity rule, this federal breach of contract claim must at minimum be dismissed as duplicative of Plaintiff's pending state-court proceeding. The power to dismiss a duplicative lawsuit is "meant to foster judicial economy and the 'comprehensive disposition of litigation.'" *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). The doctrine also exists "to protect parties from 'the vexation of concurrent litigation over the same subject matter.'" *Id.* Both lawsuits arise out of the identical disciplinary proceeding and were filed by the same counsel within twenty-four hours of each other. "The two actions need not be identical" to warrant dismissal or a stay — it is sufficient that there is "substantial identity of parties" and that both actions arose from the "same subject matter or series of alleged wrongs." *Syncora Guarantee Inc. v. JP Morgan Sec., LLC*, 110 A.D.3d 87, 95 (1st Dept. 2013).

relevant policies." *Id.* at *77. Courts are "ill-equipped to second-guess [the institution's] exercise of that discretion." *Id.*

This principle applies with full force here. Rupp's Complaint reduces to an assertion that Albany Law's administrators exercised their discretion badly — that the Reporter was insufficiently neutral, that the charges were framed too broadly, and that confidentiality procedures were imperfectly observed. Even accepting those allegations as true, they describe the administration of discretionary institutional processes, not the breach of specific, measurable contractual commitments.[14] *See Klinge*, 244 A.D.2d at 614.

### C. Plaintiff's Concurrent Sworn Filings Negate the Claim

Plaintiff's own sworn filings in the Rupp Defamation Case and the Article 78 Proceeding contain judicial admissions that contradict and defeat each alleged breach. Under *Iqbal* and *Twombly*, a complaint whose core factual allegations are negated by the plaintiff's own concurrent sworn filings fails to state a plausible claim. The present action alleges that Albany Law breached its contractual confidentiality obligations by disclosing Rupp's disciplinary proceeding to the BLSA. Compl. ¶ 195. However, Rupp's own sworn testimony in the Rupp Defamation Case establishes that the BLSA involvement was Prof. Farley's personal, unauthorized act — not a disclosure by the School. Klein Dec. Ex. G at ¶ 60.

Further, a plaintiff must plead actual, cognizable damages flowing from the alleged breach. *Flomenbaum v. New York Univ.*, 71 A.D.3d 80, 91 (1st Dept. 2009). Rupp's claimed damages — "loss of educational opportunity through disruption of his academic progression and exposure to potential suspension; severe emotional distress, reputational harm, and the potential

---

[14]  *Ward v. N.Y. Univ.*, 2000 U.S. Dist. LEXIS 14067, at *4 (S.D.N.Y. 2000) (holding that "broad pronouncements" of an institution's "compliance with existing anti-discrimination laws" and promises of "equitable treatment of all students . . . cannot form the basis for a breach of contract claim.").

29

loss of his legal education and career" (Compl. ¶ 199) — are comprehensively refuted by his own concurrent filings. These sworn representations are flatly inconsistent with Plaintiff's federal allegations of "ongoing" harm and threatened loss of his legal career (Compl. ¶ 199) and foreclose any cognizable damages on this claim.  According to Plaintiff, he "remains a law student in good academic and disciplinary standing at Albany Law." Klein Dec. Ex. H at ¶ 10. Any injury that Rupp may have incurred is a direct result of his admitted physical and nonconsensual contact with Prof. Farley.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss the Complaint should be granted, together with such other and further relief as the Court deems just and proper.

Dated:  May 11, 2026

BOND, SCHOENECK & KING, PLLC

By:_____
    Stuart F. Klein, Esq.
    Bar Roll No. 511691
    Kristina Wieneke, Esq.
    Bar Roll No. 705763
*Attorneys for Defendant*
22 Corporate Woods Blvd., Suite 501
Albany, New York  12211
Telephone:  (518) 533-3000

30

23440299.v4-5/11/26